UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:11-cr-112-Orl-28DAB

CARLOS ALBERTO HEREU

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E.
O'Neill, United States Attorney for the Middle District of Florida, and the defendant,
CARLOS ALBERTO HEREU, and the attorney for the defendant, Gustavo D. Lage,
mutually agree as follows:

A.    **Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the
Indictment. Count One charges the defendant with conspiracy to manufacture and
possess with intent to manufacture and distribute marijuana, in violation of 21 U.S.C. §
846. Count Two charges the defendant with manufacture and possession with intent to
manufacture and distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).

2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment
of 10 years up to life imprisonment, a fine of not more than $4 million, a term of

Defendant's Initials _C. H._                        AF Approval _MMR_

supervised release of no less than 5 years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing.

Count Two is punishable by a mandatory minimum term of imprisonment of 10 years up to life imprisonment, a fine of not more than $4 million, a term of supervised release of no less than 5 years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3.      Under Apprendi v. New Jersey, 530 U.S. 466 (2000), a maximum sentence of lifetime imprisonment may be imposed regarding Count One and Count Two because the following facts have been admitted by the defendant and are established by this plea of guilty:

That the amount of the mixture and substance containing a detectable amount of marijuana was at least one thousand plants as charged.

4.      Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

> First:      Two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common or unlawful plan, as charged in the indictment;

Defendant's Initials _C. H_      2

| Second: | The defendant, knowing the unlawful purpose of the plan, willfully joined in it; |
|---|---|
| Third: | The object of the unlawful plan was to manufacture, or possess with intent to manufacture or distribute marijuana, as charged; and |
| Fourth: | The mixture and substance containing a detectable amount of marijuana consisted of one thousand or more plants. |

The elements of Count Two are:

| First: | The defendant knowingly and intentionally manufactured or possessed marijuana, as charged; |
|---|---|
| Second: | The defendant manufactured, or possessed the substance with the intent to manufacture or distribute it; and |
| Third: | The mixture and substance containing a detectable amount of marijuana consisted of one thousand or more plants. |

5. **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. **Mandatory Restitution to Victim of Offense of Conviction**

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to Florida Power and Light.

Defendant's Initials _C. H._          3

7. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all

Defendant's Initials _C. H._                    4

relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining

Defendant's Initials _C. H._                    5

the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of

Defendant's Initials _C. H_          6

the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth

Defendant's Initials _C . H ._          7

in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 21, United States Code, Section 853(a)(1) and (2), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offenses to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

Defendant's Initials  C. H.                    8

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this

Defendant's Initials _C. H_          9

clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## B.    **Standard Terms and Conditions**

### 1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _C. H._          10

2.  Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.  Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

Defendant's Initials _C. H._                   11

4.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5.   Defendant's Waiver of Right to Appeal and
     Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence

Defendant's Initials _C. H._          12

exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature

Defendant's Initials _C H_                    13

of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

Defendant's Initials _____    14

## FACTS

### Summary

Based on information received from a cooperating source ("CS") and corroborating information, a search warrant was obtained for 2388 Titan Row, a warehouse in Orlando, Orange County, Florida, within the Middle District of Florida. The warehouse was searched on March 7, 2011, and found to contain over one thousand marijuana plants with active root systems and an active marijuana grow operation. Carlos Alberto Hereu ("HEREU") was identified as the person actively overseeing the operation by the CS, and the CS also noted several others involved including two Mexican workers. HEREU and Luis Antonio Gomez-Garcia ("GOMEZ-GARCIA"), one of the two Mexican workers, were found in the warehouse when the search warrant was executed. Both were interviewed after being advised of their constitutional rights, and made inculpatory statements. HEREU was also audiotaped several days earlier in a controlled encounter with the CS.

### Information from CS

On March 4, 2011, DEA Task Force Agent ("TFA") Terence Nicolas and DEA Special Agent ("SA") Mabel Reyes interviewed the CS. The CS stated that the CS had information on the marijuana cultivation and manufacture activities of HEREU. The CS stated that the CS also believed that HEREU had an active arrest warrant for drug related offenses. TFA Nicolas confirmed that HEREU had an active warrant verified through the National Criminal Information Center ("NCIC") for Possession of Marijuana that was issued as a result of the request of DEA Miami in 1999. The CS advised that the CS had recently and frequently been inside a commercial building located at 2388

Defendant's Initials _C. H._                    15

Titan Row. The CS stated that the building contained approximately one hundred lights used to facilitate plant growth and approximately one thousand three hundred marijuana plants.

The CS advised that the CS was hired by HEREU to do legitimate handyman and electrical work at HEREU's home, approximately two and a half years ago. According to the CS, approximately one year ago, HEREU again contacted the CS. The CS stated that HEREU had a building located at 2388 Titan Row that was owned by another person. The CS was hired by HEREU to perform electrical work at the 2388 Titan Row location, that would facilitate a large marijuana growing operation. The CS advised that the CS diverted power from the outside of the building to bypass the electrical meter, at HEREU's request. The CS stated that the CS also installed approximately one hundred lights, timers, and wiring used to provide an alternative light source that would be conducive to a marijuana manufacturing operation. The CS stated that two unknown Mexican males also assisted with setting up the other components of the operation, including irrigation and drainage. According to the CS, the building is always occupied due to HEREU's fear that someone may burglarize the building if it is left unattended. The two unknown Mexican males rotate shifts starting at 7 a.m. and 7 p.m., to provide security and also to help maintain the plants. The CS stated that the CS has a key to the building that was provided by HEREU, which the CS uses to access the building to perform work. The CS stated that the CS was paid approximately $1,500.00 per week in cash for services rendered.

The CS said that there are approximately one thousand three hundred marijuana plants growing inside this location. The CS advised that approximately four hundred of

Defendant's Initials _C.H_                16

the plants are over five feet high and expected to produce marijuana buds toward the end of March or the beginning of April. The CS said that the marijuana would be harvested and HEREU expects to sell the marijuana to an unknown buyer for between $3,000.00 and $3,600.00 per pound of marijuana. The CS stated that the remaining approximately nine hundred plants were in various stages of growth and would be rotated as the larger plants were harvested.

The CS provided the telephone number for HEREU.

The CS stated that HEREU wanted to meet with the CS on March 5, 2011, to pay for the CS's services and to give the CS money to purchase electrical supplies for the cultivation operation.

Proactive Investigation

March 5, 2011, Recorded Conversation Between CS and HEREU

On March 5, 2011, at approximately 8:30 a.m., TFA Nicolas and members of the DEA Orlando District Office Task Force Group met with the CS at a predetermined location. The CS and the CS's vehicle were searched for contraband and found to contain no contraband. The CS was provided with audio transmitting and recording equipment to record any relevant conversations. The CS traveled to 2388 Titan Row while under constant surveillance of assisting Agents. At approximately 8:45 a.m., the CS arrived at 2388 Titan Row, parked the CS's vehicle at the rear of the building, and entered the location. While inside, the CS took digital photos of the marijuana plants and the inside of the building. The photos showed a large number of plants which had an appearance consistent with marijuana plants. One photo showed marijuana plants in front of a ruler which showed some of the plants to be greater than 64 inches in

Defendant's Initials  C .H .                    17

height. There were photos of smaller plants that appeared to be several inches in height which were growing in pots of soil. The photos showed large light sources, light reflectors, and irrigation tubing which were used to facilitate the growth of the plants. The photos, along with photos taken on a previous date of electrical wiring and circuit breaker boxes, were later turned over to TFA Nicolas by the CS.

At approximately 9:25 a.m., a black Mercedes Benz arrived at the warehouse. The vehicle parked in the area of the CS's vehicle and the driver entered the building. The CS stated that HEREU was driving this vehicle as he does frequently. HEREU entered the building and spoke with the CS. HEREU provided the CS with $1,300.00 as payment for the CS's electrician services and another $300.00 to pay for supplies needed for the marijuana growing operation. The CS was equipped with audio recording and transmitting devices, and the conversation between the CS and HEREU was captured on audio tape. The CS and HEREU spoke in Spanish about maintenance activities necessary to cultivate the marijuana plants.

At approximately 9:47 a.m., the CS departed the location. The CS was followed to a Home Depot store located in Orlando. The CS went inside the Home Depot and purchased electrical wiring and timers for use in the marijuana grow. The CS met with surveillance Agents following the purchase and turned over the receipt in the amount of $403.57. Agents also downloaded the digital photos taken of the marijuana grow operation and recovered the audio recording and transmitting devices. DEA TFA Leo Conde and TFA Nicolas took possession of the audio equipment and recording and digital photographs from the CS.

Defendant's Initials C. H                 18

At approximately 10:20 a.m., surveillance Agents observed the black Mercedes Benz depart 2388 Titan Row. Agents also confirmed that the vehicle was driven by a bald male that matched the description of HEREU. Agents then discontinued the surveillance on the vehicle.

At approximately 10:26 a.m., the CS arrived back at 2388 Titan Row and brought the purchased items inside. At approximately 10:35 a.m., the CS departed the location. Later, the CS met with DEA TFA James Carlies and provided TFA Carlies with copies of the keys to 2388 Titan Row.

Search Warrant Authorized and Executed

On March 6, 2011, a United States Magistrate Judge authorized a search warrant for 2388 Titan Row.

On March 7, 2011, TFA Nicolas and other law enforcement officers executed the search warrant at 2388 Titan Row. During the execution of the search warrant, HEREU and GOMEZ-GARCIA were found inside the building located at 2388 Titan Row, along with over one thousand plants of marijuana with active root systems and other evidence related to the marijuana manufacturing operation, such as digital scales; a packaging machine; latex gloves; marijuana home grower's manual; miscellaneous paperwork, message boards and notebook with dates, times, and PH information; lighting systems; watering systems; and timers. A total of eleven rooms were identified in 2388 Titan Row, and were found to contain the following amounts of marijuana plants: Room #2 - 112 marijuana plants, Room #3 - 243 marijuana plants, Room #4 - 205 marijuana plants, Room #5 - 59 marijuana plants, Room #6 - 442 marijuana plants, Room #8 - 51

Defendant's Initials           19

marijuana plants, Room #9 - 40 marijuana plants, Room #10 - 69 marijuana plants, and Room #11 - 234 marijuana plants.

In total, one thousand four hundred and fifty-five marijuana plants, each with active root systems, were found in 2388 Titan Row and were part of an active marijuana manufacturing operation. Based on the quantity of marijuana and other factors, the evidence shows that the marijuana was being manufactured, and was possessed with the intention of manufacturing and distributing the marijuana. Additionally, other marijuana plants were found that did not have active root systems, and were not counted as a result. The marijuana was submitted to the DEA laboratory in Miami. The execution of the search warrant was recorded on videotape and via digital photographs.

<u>Interviews and Lease Agreement</u>

HEREU was arrested on the outstanding arrest warrant mentioned above and was advised of his constitutional rights. HEREU signed a written waiver regarding his rights. HEREU stated the following in response to questioning by law enforcement officers. HEREU stated he believed it was okay to grow marijuana because it had been legalized in some states. HEREU stated he knew he was in a lot of trouble. HEREU indicated that he did not have a job and did not have any money as a result. HEREU admitted he worked in the grow house and stated that the setup was financed by the property's owner. HEREU provided additional statements to law enforcement. HEREU was also searched and found to have an iPhone and a set of keys that accessed 2388 Titan Row.

GOMEZ-GARCIA was arrested based on the probable cause set forth in the criminal complaint affidavit and also was illegally present in the country.

Defendant's Initials _____          20

GOMEZ-GARCIA was advised of his constitutional rights. GOMEZ-GARCIA stated he was an illegal alien. GOMEZ-GARCIA stated that HEREU paid him $500.00 per week to tend to the marijuana plants in the building, and admitted to performing that role in the operation. GOMEZ-GARCIA also provided his pedigree information to law enforcement. GOMEZ-GARCIA was also found in possession of a set of keys that accessed 2388 Titan Row and a cellular telephone.

A lease was obtained for the property that was entered on August 1, 2010, between HEREU and the property owner.

10. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11.  Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___26___ day of May, 2011.


ROBERT E. O'NEILL
United States Attorney

By:

_____
CARLOS ALBERTO HEREU
Defendant

J. Bishop Ravenel
Assistant United States Attorney

_____
Gustavo D. Lage
Attorney for Defendant

Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____          22